IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF ILLINOIS

| | |
|---|---|
| MARK GAINES, #B-37198, ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| vs. ) | CASE NO. 11-cv-003-JPG |
| ) | |
| RANDALL BAYLER, C/O HARMON, ) | |
| and DERWIN L. RYKER, ) | |
| ) | |
| Defendants. ) | |

## MEMORANDUM AND ORDER

**GILBERT, District Judge:**

Plaintiff Mark Gaines, a former inmate of the Illinois Department of Corrections, brings this action for deprivations of his constitutional rights pursuant to 42 U.S.C. § 1983. Plaintiff filed his complaint while he was incarcerated in Menard Correctional Center. His claims are based on an incident that occurred while Plaintiff was housed at Lawrence Correctional Center. Plaintiff is now serving a three-year term of mandatory supervised release. He was sentenced to concurrent terms of thirty-six years for murder, and four years for armed robbery. This case is now before the Court for a preliminary review of the complaint pursuant to 28 U.S.C. § 1915A, which provides:

> (a) **Screening.**– The court shall review, before docketing, if feasible or, in any event, as soon as practicable after docketing, a complaint in a civil action in which a prisoner seeks redress from a governmental entity or officer or employee of a governmental entity.
>
> (b) **Grounds for Dismissal.**– On review, the court shall identify cognizable claims or dismiss the complaint, or any portion of the complaint, if the complaint–
> (1) is frivolous, malicious, or fails to state a claim on which relief may be granted; or
> (2) seeks monetary relief from a defendant who is immune from such relief.

28 U.S.C. § 1915A.

An action or claim is frivolous if "it lacks an arguable basis either in law or in fact." *Neitzke v. Williams*, 490 U.S. 319, 325 (1989). An action fails to state a claim upon which relief can be granted if it does not plead "enough facts to state a claim to relief that is plausible on its face." *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007). Conversely, a complaint is plausible on its face "when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 129 S. Ct. 1937, 1949 (2009). Although the Court is obligated to accept factual allegations as true, some factual allegations may be so sketchy or implausible that they fail to provide sufficient notice of a plaintiff's claim. *Brooks v. Ross*, 578 F.3d 574, 581 (7th Cir. 2009). Additionally, Courts "should not accept as adequate abstract recitations of the elements of a cause of action or conclusory legal statements." *Id*. At the same time, however, the factual allegations of a pro se complaint are to be liberally construed. *See Rodriguez v. Plymouth Ambulance Serv.*, 577 F.3d 816, 821 (7th Cir. 2009).

Upon careful review of the complaint and supporting exhibits, the Court finds it appropriate to exercise its authority under § 1915A; portions of this action are subject to summary dismissal.

**The Complaint**

Plaintiff was transferred to the Lawrence Correctional Center ("Lawrence") in June or July 2009. He had previously been incarcerated at Lawrence during January and February 2002, and had some confrontations with correctional officers during that period. Plaintiff gives no further details as to the nature of these prior incidents. Plaintiff wrote to Defendant Ryker, the

warden of Lawrence, upon his transfer, expressing concern that he might be subject to harassment or harm at the hands of Lawrence staff in retaliation for these past incidents.  Plaintiff also personally spoke about these concerns with Defendant Ryker three times beginning in late July, with the third contact being on August 18, 2009.  However, Defendant Ryker took no remedial action.

On August 19, 2009, Defendant Bayler moved Plaintiff from his segregation cell in C-wing to another cell in the A-wing.  Plaintiff's hands were cuffed behind his back.  During the walk through the prison, Defendant Bayler repeatedly poked Plaintiff in the back with his fist while verbally abusing Plaintiff.  Defendant Bayler then added a D-ring cuff to the first set of handcuffs, and proceeded to poke Plaintiff in the back with a metal rod that was attached to the D-ring cuff, until they arrived at Plaintiff's new cell.  Plaintiff believes that Defendant Bayler acted in this manner because of Plaintiff's complaints and incidents involving Bayler and other staff during his previous stay in Lawrence.

After Plaintiff entered the cell, Defendant Bayler kept hold of the D-ring cuff and transferred it so that it extended outward through the cell's chuckhole, while Plaintiff stood inside the cell.  Instead of removing the handcuffs, Defendant Bayler yanked on his end of the D-ring cuffs, pulling on Plaintiff's wrists and arms.  Plaintiff pleaded for Defendant Bayler to remove the cuffs, but Defendant Bayler continued to pull on them, causing Plaintiff severe pain.

Defendant Harmon then brought Defendant Bayler a lead chain, which one or both Defendants next attached to the D-ring cuff on Plaintiff's wrists.  Defendant Bayler then sat on the floor with his foot up against the cell door and pulled on the lead chain.  This further increased the force against Plaintiff's arms and wrists, lacerating his arm and causing Plaintiff

"excruciating physical pain" (Doc. 1, p. 6).

After Plaintiff repeatedly pleaded for the handcuffs to be removed, Defendant Bayler finally loosened the chain so Plaintiff could put his arms as far out of the chuckhole as possible. By this time Plaintiff's arm was bleeding profusely, and Defendant Bayler removed the handcuffs, D-ring, and lead chain. Defendant Bayler then ordered C/O Harmon, C/O Wheeler, and Nurse Clevy, who had been in the area, to leave the A-wing. (Plaintiff does not name Wheeler or Clevy as Defendants.) Some minutes afterward, Nurse Clevy was allowed to return to assess Plaintiff's condition. Nurse Clevy had Plaintiff brought to the Health Care Unit and treated his injuries. Plaintiff was later taken to Lawrence County Hospital, where he received five sutures in his left arm. As a result of this incident, Plaintiff continues to have pain "from time to time" in his wrist and arms, and has permanent scars. Plaintiff has also suffered mental distress as a result of this incident.

Defendant Bayler later tried to file a false disciplinary report, claiming that Plaintiff attempted to assault him. Plaintiff asserts that this report was ultimately destroyed rather than placed in the "expungement files" as it should have been under Title 20 of the Illinois Administrative Code (Doc. 1, p. 7). Plaintiff does not disclose in his complaint the outcome of any disciplinary action against him, nor does he ask this Court to address that matter. However, Plaintiff notes that Defendant Bayler was found to have failed to comply with the Illinois Department of Corrections regulations on the use of force.

Plaintiff outlines two counts in his complaint: Count I against Defendants Bayler and Harmon for excessive use of force, and Count II against Defendant Ryker for failing to adequately train Defendants Bayler and Harmon in methods of handling prisoners without using

excessive force, and for failing to protect Plaintiff after Plaintiff raised concerns over possible retaliation by staff.

Plaintiff seeks a declaration that his constitutional rights were violated, compensatory and punitive damages, and payment for future medical expenses related to his injuries.

**Discussion**

Based on the allegations of the complaint, the Court finds it convenient to divide the pro se action into three (3) counts. The parties and the Court will use these designations in all future pleadings and orders, unless otherwise directed by a judicial officer of this Court. The designation of these counts does not constitute an opinion as to their merit.

**Count 1 - Excessive Force**

The intentional use of excessive force by prison guards against an inmate without penological justification constitutes cruel and unusual punishment in violation of the Eighth Amendment and is actionable under § 1983. *See Wilkins v. Gaddy*, 130 S. Ct. 1175 (2010); *DeWalt v. Carter*, 224 F.3d 607, 619 (7th Cir. 2000). An inmate must show that an assault occurred, and that "it was carried out 'maliciously and sadistically' rather than as part of 'a good-faith effort to maintain or restore discipline.'" *Wilkins*, 130 S. Ct. at 1180 (citing *Hudson v. McMillian*, 503 U.S. 1, 6 (1992)). An inmate seeking damages for the use of excessive force need not establish serious bodily injury to make a claim, but not "every malevolent touch by a prison guard gives rise to a federal cause of action." *Id.* (the question is whether force was de minimis, not whether the injury suffered was de minimis); *see also Outlaw v. Newkirk*, 259 F.3d 833, 837-38 (7th Cir. 2001).

Plaintiff has alleged that Defendant Bayler maliciously used excessive force against him,

at a time when Plaintiff had his hands cuffed behind his back, and was restrained inside his cell. The circumstances indicate that at the time Defendant Bayler applied force to Plaintiff, Plaintiff was not in a position to be a threat to Defendant Bayler or to offer resistance. Plaintiff sustained injury serious enough to require stitches. As to Defendant Harmon, Plaintiff alleges that upon observing Defendant Bayler pulling on Plaintiff's wrists with the D-ring cuffs which extended through the cell chuckhole, instead of making any attempt to intervene to prevent further use of force, Defendant Harmon offered to get a lead chain. Defendant Bayler then proceeded to use the lead chain to further increase the force applied to Plaintiff.

Plaintiff has sufficiently alleged the involvement of both Defendants Bayler and Harmon in the application of excessive force against him. Therefore, Plaintiff's claim against Defendants Bayler and Harmon cannot be dismissed at this time.

**Count 2 - Retaliation**

Although Plaintiff does not overtly plead a separate retaliation claim, he does allege that Defendant Bayler's actions described above were taken in retaliation for Plaintiff's involvement in certain incidents during his former time at Lawrence. Therefore, the Court will briefly address this matter.

In the prison context, where an inmate is alleging retaliation, the inmate must identify the reasons that retaliation has been taken, as well as "the act or acts claimed to have constituted retaliation," so as to put those charged with the retaliation on notice of the claim(s). *Higgs v. Carver*, 286 F.3d 437, 439 (7th Cir. 2002). The Plaintiff must have engaged in some protected First Amendment activity (for example, filing a grievance or otherwise complaining about conditions of confinement), experienced an adverse action that would likely deter such protected

activity in the future, and must allege that the protected activity was "at least a motivating factor" in the Defendants' decision to take the retaliatory action. *Bridges v. Gilbert*, 557 F.3d 541, 552 (7th Cir. 2009). The inmate need not plead facts to establish the claim beyond doubt, but need only provide the bare essentials of the claim, and in a claim for retaliation the reason for the retaliation and the acts taken in an effort to retaliate suffice. *Higgs*, 286 F.3d at 439.

While Plaintiff has described in detail the use of force against him, and asserted that Defendant Bayler acted in this manner in retaliation for some past incidents in which Defendant Bayler took part (Doc. 1, p. 5), the complaint never identifies any protected act by the Plaintiff that could have been the reason for the alleged retaliation. Plaintiff makes only vague allegations of "past confrontations with staff" (Doc. 1, p. 3) and "complaints" (Doc. 1, p. 5). More information is needed if Plaintiff intends to state a claim for retaliation upon which relief might be granted. Therefore, Plaintiff's retaliation claim, if indeed he meant to assert one, must be dismissed without prejudice.

**Count 3 - Failure to Train/Failure to Protect**

It is well established that there is no supervisory liability in a § 1983 action. "The doctrine of *respondeat superior* does not apply to § 1983 actions; thus to be held individually liable, a defendant must be 'personally responsible for the deprivation of a constitutional right.'" *Sanville v. McCaughtry*, 266 F.3d 724, 740 (7th Cir. 2001) (quoting *Chavez v. Ill. State Police*, 251 F.3d 612, 651 (7th Cir. 2001)). *See also Monell v. Dep't of Soc. Servs.*, 436 U.S. 658 (1978); *Eades v. Thompson*, 823 F.2d 1055, 1063 (7th Cir. 1987); *Wolf-Lillie v. Sonquist*, 699 F.2d 864, 869 (7th Cir. 1983); *Duncan v. Duckworth*, 644 F.2d 653, 655-56 (7th Cir. 1981). Plaintiff's complaint, however, goes beyond merely alleging supervisory liability. Plaintiff outlines his

claim against Defendant Warden Ryker as a failure to adequately train Defendants Bayler and Harmon on proper procedures to escort and handle prisoners without using excessive force. In addition, Plaintiff includes allegations that Defendant Ryker was deliberately indifferent to Plaintiff's requests for measures to be taken to protect Plaintiff from harassment or retaliation by Lawrence staff on account of Plaintiff's past conflicts with staff when he was previously housed at Lawrence.

In limited circumstances, an allegation of "failure to train" may be the basis for § 1983 liability. *City of Canton, Ohio v. Harris*, 489 U.S. 378, 387 (1989) (holding limited by *Farmer v. Brennan*, 511 U.S. 825, 840-42 (1994) (deliberate indifference has both an objective and subjective component)); *see also Monell v. Dep't of Soc. Servs.*, 436 U.S. 658 (1978); *Sallenger v. City of Springfield, Ill.*, 630 F.3d 499, 504 (7th Cir. 2010). The failure to train must amount to deliberate indifference to the rights of the person harmed, and the failure must have been the "moving force" behind the constitutional violation. *Harris*, 489 U.S. at 388-89. Ultimately, under this theory, the deficiency in training must be shown to be the actual cause of the deliberate indifference that harmed the plaintiff. *Id*. at 391. Such is not the case here. Even if the Court were to accept Plaintiff's contention that Defendant Ryker failed to adequately train Defendants Bayler and Harmon, such failure cannot be said to have caused the harm to Plaintiff. Defendants Bayler and Harmon had to know that the actions described by Plaintiff were improper, yet deliberately chose to use excessive force despite any training they had. The intentional actions of Defendants Bayler and Harmon were the cause of Plaintiff's injuries. Without any direct causal connection between the alleged failure to train and the harm suffered by Plaintiff, the "failure to train" allegation boils down to a *respondeat superior* claim, which must fail.

However, when analyzed under the framework of a claim for failure to protect, the outcome may differ. A defendant in a supervisory capacity may be liable for "deliberate, reckless indifference" where he or she has purposefully ignored the misconduct of his/her subordinates. *Sanville v. McCaughtry*, 266 F.3d 72 4, 740 (7th Cir. 2001). As noted above, while there is no supervisory liability for constitutional torts, "supervisors can violate the Constitution themselves if they 'know about the [unconstitutional] conduct and facilitate it, approve it, condone it, or turn a blind eye for fear of what they might see.'" *T.E. v. Grindle*, 599 F.3d 583, 588 (7th Cir. 2010) (quoting *Jones v. City of Chicago,* 856 F.2d 985, 992 (7th Cir. 1988)); *Chavez v. Illinois State Police*, 251 F.3d 612, 651 (7th Cir. 2001). *See also Slakan v. Porter*, 737 F.2d 368, 372 -374 (4th Cir. 1984) (to hold a supervisor liable for excessive force inflicted by subordinates, plaintiff must "demonstrate that the prisoners face a pervasive and unreasonable risk of harm from some specified source, [and] he must show that the supervisor's corrective inaction amounts to deliberate indifference or 'tacit authorization of the offensive [practices]'" (quoting *Orpiano v. Johnson,* 632 F.2d 1096, 1101 (4th Cir.1980)). However, "supervisors who are merely negligent in failing to detect and prevent subordinates' misconduct are not liable." *Jones*, 856 F.2d at 992-93 (7th Cir. 1988).

In the case at bar, Plaintiff claims that Defendant Ryker knew that Plaintiff was at risk of being subjected to harm or harassment by guards at Lawrence, because Plaintiff brought these concerns to Defendant Ryker's attention. However, Defendant Ryker ignored the risk to Plaintiff and took no corrective action. It is not clear whether the concerns Plaintiff expressed to Defendant Ryker described a specific or substantial risk of serious harm, but the allegations in the complaint encompass this possibility. As to Defendant Ryker's knowledge of the risk,

Plaintiff claims that on four separate occasions, he made Defendant Ryker aware of his concerns about potential retaliation and harassment by guards. Plaintiff's final contact with Defendant Ryker was on the very day before Plaintiff was assaulted by Defendants Bayler and Harmon. Plaintiff's complaint does not detail what he told Defendant Ryker, and it cannot be determined at this stage whether Defendant Ryker's lack of response rose to the level of deliberate indifference to a known threat or was merely negligent. Therefore, Plaintiff's claim for failure to protect cannot be dismissed at this time.

**Pending Motions**

Along with his complaint, Plaintiff filed a motion (Doc. 4) requesting the court to send all mail and documents to him via certified mail, because the prison mail delivery was running one month behind and Plaintiff feared he would not timely receive his mail from this Court. The Court will not make exceptions to the normal practice of sending documents via regular mail (or by electronic filing for those prisons that participate in that system). In any case, now that Plaintiff has been released on parole, this matter has become moot. Accordingly, Plaintiff's motion (Doc. 4) is **DENIED.**

**Disposition**

**IT IS HEREBY ORDERED** that **COUNT TWO** fails to state a claim upon which relief may be granted, and thus is **DISMISSED** without prejudice.

**IT IS FURTHER ORDERED** that the Clerk of Court shall prepare for Defendants **BAYLER, HARMON** and **RYKER** (1) Form 5 (Notice of a Lawsuit and Request to Waive Service of a Summons), and (2) Form 6 (Waiver of Service of Summons). The Clerk is **DIRECTED** to mail these forms, a copy of the complaint, and this Memorandum and Order to

each Defendant's place of employment as identified by Plaintiff. If a Defendant fails to sign and return the Waiver of Service of Summons (Form 6) to the Clerk within 30 days from the date the forms were sent, the Clerk shall take appropriate steps to effect formal service on that Defendant, and the Court will require that Defendant to pay the full costs of formal service, to the extent authorized by the Federal Rules of Civil Procedure.

**IT IS FURTHER ORDERED** that, with respect to a Defendant who no longer can be found at the work address provided by Plaintiff, the employer shall furnish the Clerk with the Defendant's current work address, or, if not known, the Defendant's last-known address. This information shall be used only for sending the forms as directed above or for formally effecting service. Any documentation of the address shall be retained only by the Clerk. Address information shall not be maintained in the court file or disclosed by the Clerk.

**IT IS FURTHER ORDERED** that Plaintiff shall serve upon Defendants (or upon defense counsel once an appearance is entered), a copy of every pleading or other document submitted for consideration by the Court. Plaintiff shall include with the original paper to be filed a certificate stating the date on which a true and correct copy of the document was served on Defendants or counsel. Any paper received by a district judge or magistrate judge that has not been filed with the Clerk or that fails to include a certificate of service will be disregarded by the Court.

Defendants are **ORDERED** to timely file an appropriate responsive pleading to the complaint and shall not waive filing a reply pursuant to 42 U.S.C. § 1997e(g).

Pursuant to Local Rule 72.1(a)(2), this action is **REFERRED** to United States Magistrate Judge Frazier for further pre-trial proceedings.

Further, this entire matter is **REFERRED** to United States Magistrate Judge Frazier for disposition, as contemplated by Local Rule 72.2(b)(2) and 28 U.S.C. § 636(c), *should all the parties consent to such a referral.*

Finally, Plaintiff is **ADVISED** that he is under a continuing obligation to keep the Clerk of Court and each opposing party informed of any change in his address; the Court will not independently investigate his whereabouts. This shall be done in writing and not later than **7 days** after a transfer or other change in address occurs. Failure to comply with this order will cause a delay in the transmission of court documents and may result in dismissal of this action for want of prosecution. *See* FED. R. CIV. P. 41(b).

**IT IS SO ORDERED.**

**DATED: August 9, 2011**

      *s/J. Phil Gilbert*
      **United States District Judge**